## METALS RECOVERY CO. v. ANACONDA COPPER MINING CO.

District Court, D. Montana. January 31, 1928.

### No. 332.

1. Patents ⬡99—Object of statute requiring full description is to encourage invention, to avoid infringement, and to enable public to use invention on expiration of monopoly (35 USCA § 33).

Object of Rev. St. § 4888 (35 USCA § 33; Comp. St. § 9432), requiring application for patent to contain description of invention and manner and process of using it in such full, clear, and concise terms as to enable person skilled in the art to use it, is to encourage and reward invention or discovery by monopoly for limited time, to definitely advise public of extent of invention and monopoly, so that it may avoid infringement, and to enable public, by resort to teachings of patent, to use patentee's contribution to the art after his monopoly has expired.

2. Patents ⬡328—1,364,304, claims 1–4, for concentration of minerals by flotation, held invalid for insufficient description, but, if valid, not infringed (35 USCA § 33).

Perkins patent, No. 1,364,304, claims 1–4, for improvement of process of concentration of minerals by flotation, held invalid for insufficiency and indefiniteness of description, under Rev. St. § 4888 (35 USCA § 33; Comp. St. § 9432), necessitating experiments to determine substances to be used, but, even if valid, not infringed.

In Equity. Patent infringement suit by the Metals Recovery Company against the Anaconda Copper Mining Company. Decree for defendant.

Edward B. Howell, of Butte, Mont., and Pennie, Davis, Marvin & Edmonds, William H. Davis, and Merton W. Sage, all of New York City, for plaintiff.

D. M. Kelly, D'Gay Stivers, John A. Groeneveld, and L. O. Evans, all of Butte, Mont., and Henry D. Williams, Charles

Neave, and John F. Neary, all of New York City, for defendant.

BOURQUIN, District Judge. This infringement suit involves claims 1 to 4 of patent No. 1,364,304, for which Perkins filed application July 21, 1919. The specification is that the invention is "new and useful improvements in flotation of minerals," based on the discovery that improved results are obtained "with the addition, to the ore or mineral pulp, of certain nonoleaginous solid organic compounds, which themselves have substantially no frothing properties, but which have valuable properties as collecting agents for the mineral * * * when used in connection with a suitable frothing agent"; that "among the agents * * * are reduced compounds which are relatively easily oxidizable, such as, for example, diazo-amino-benzene"; that, "although the collecting agents are substantially insoluble, and are commonly referred to as insoluble, nevertheless they are soluble to a very small degree"; that among the agents "are included certain of the aromatic thio-ureas, and many of the azo and diazo compounds"; that he has found diazo-amino-benzene to be of particular value; that the agents can be incorporated by grinding with the ore, or in a solvent added to the pulp, which solvent may "advantageously itself be an agent of good frothing qualities, * * * which supplies the necessary froth for the flotation operation" which follows; that the addition of alkali is sometimes advantageous; that the amount of the collecting agent "may vary somewhat, and may be as little as one-fifth or one-fourth of a pound per ton of ore," he having "obtained good results with the use of as little as one-thirtieth of a pound per ton of ore; larger amounts may, however, be used"; that in contemporaneous applications he sets out processes to make use of "organic nitrogen compounds, including azo, diazo, and diazo-amino compounds," specifically, diazo-amino-toluene, and also "organic thio-urea and other nitrogen-sulphur compounds, such as thio-carbanilid, many of which are likewise nonfrothing collecting agents"; and that certain of the "claims of the present case are intended to be of a comprehensive and generic character for the process, in which such substantially nonfrothing collecting agents are employed, while the specific claims * * * are directed" to the use of diazo-amino-benzene. Four tests of the latter only, with different frothers, are described in the specification. Claims 1 to 4 are alleged to have been infringed, and are as follows:

26 F.(2d)—47

"1. The method of effecting the concentration of minerals by flotation, which comprises adding to the mineral pulp a small amount of a substantially nonoleaginous organic mineral collecting agent which is substantially nonfrothing, and subjecting the resulting mixture to a froth flotation operation, substantially as described.

"2. The method of effecting the concentration of minerals by flotation, which comprises adding to the mineral pulp a substantially nonfrothing, nonoleaginous organic mineral collecting agent which is substantially nonfrothing, together with an agent having good frothing properties, and subjecting the resulting mixture to a froth flotation operation, substantially as described.

"3. The method of effecting the concentration of minerals by flotation, which comprises adding to the mineral pulp a small amount of a reduced and easily oxidizable organic mineral collecting agent which is substantially nonfrothing, and subjecting the resulting mixture to a froth flotation operation, substantially as described.

"4. The method of effecting the concentration of minerals by flotation, which comprises adding to the mineral pulp a small amount of a reduced and easily oxidizable organic mineral collecting agent which is substantially nonfrothing, together with an agent having good frothing properties, and subjecting the resulting mixture to a froth flotation operation, substantially as described."

The flotation process in ore dressing was invented by Sulman, Picard and Ballot. Their patent, No. 835,120, was fruitful of litigation wherein, so far as its mysteries are understood, the process is described. See Minerals Separation Case, 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019, and its references.

The remarkable simplicity and success of the process inspired research to apply and improve the process and to evade the patent.

Before Perkins it was well known and patented that other substances than oils, and with or without oils, would function in the process, and likewise known that some substances operated as collectors and others as frothers therein. An illustration of the former is alpha-naphthylamin of Corliss' patent, 1,228,183, of March, 1917, and of the latter is coal tar for a collector, used with pine oil as a frother, described in Metallurgical and Chemical Engineering, February 1, 1916.

Perkins was engaged in research in the Mellon Institute, with and following Corliss, whose labors resulted in the latter's patent

aforesaid, and made his discovery in October, 1917. Thereafter, and to his application for the patent in suit, Perkins tested many organic compounds; but it is not clear how many he found which possessed all the attributes stipulated in the patent.

There is no rule, principle, or guide to discover the fact, but experimentation. The invention or discovery in the patent specified is a new collector in the old flotation process, combining attributes as follows: (1) An organic compound, (2) solid, (3) nonoleaginous, (4) commonly classed as insoluble, substantially insoluble, but soluble to a very small degree, (5) without substantial frothing properties, (6) having mineral-collecting properties, discoverable and effective when (7) used with, not all, but some, *suitable* frothing agent, and in addition, in respect to claims 3 and 4, (8) reduced, and (9) relatively easily oxidizable, such as, for example, diazo-amino-benzene.

The philosophy of the process, why and how it operates, has been and yet is more or less a mystery of the art; Perkins declining to commit himself to explanation, further than to an appearance of adsorption of the substances upon the minerals, suggesting a catalytic action. Hence, necessity for experimentation. The evidence is there are some 300,000 organic compounds, of which, so far as experimentation has disclosed, a very small part combines all the attributes of the patent. As many may not possess any one or more of these essentials as do possess them, or, possessing one or more, may not possess any of the remainder, in well-nigh infinite combinations; that is to say, the substance may be an organic compound, but not solid, nor nonoleaginous, nor commonly classed as insoluble, substantially insoluble, but soluble to a very small degree, nor without substantial frothing properties, nor mineral collecting, nor reduced, nor relatively easily oxidizable, like diazo-amino-benzene, nor effective when used with some suitable frothing agent, or it may possess all the combinations save the last, or any other one of them.

And, lacking any one attribute of the combine, the substance is not within the patent. Obviously, the discovery of any effective substance, one which will do the work, involves a progressive series of experiments in respect to any substance, wherein, as the patent indicates and the evidence is, the result is few successes and many failures. The patent specifically names two substances, one of which, diazo-amino-benzene, lacks at least the attribute of relatively easily oxidizable, being very difficult to oxidize, and states that others may be found in two certain groups.

In view of the premises, defendant contends that the claims are invalid within the rule of the Incandescent Lamp Case, 159 U. S. 465, 16 S. Ct. 75, 40 L. Ed. 221, Béné v. Jeantet, 129 U. S. 683, 9 S. Ct. 428, 32 L. Ed. 803, and like cases. So doth it seem to the court. The doctrine of said cases is nothing but the statute (section 4888, R. S.; 35 USCA § 33; Comp. St. § 9432), which requires that the application for patent shall contain a description of the invention or discovery claimed, "and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same."

[1] The object of the statute is to encourage and reward invention or discovery, by monopoly for limited time; to definitely advise the public of the extent of invention, discovery, and monopoly, so that it may avoid infringement; to disclose how much of the public domain is segregated for the benefit of the patentee, and wherein, without his leave, none other can venture; and to enable the public by resort to the teaching of the patent to make and use the patentee's contribution to the art after his monopoly has expired.

[2] This patent falls short of the statutory requirement. At most, it informs the public that of 300,000 compounds have been found several, which in indefinite circumstances will contribute to successful flotation of minerals, and that experimentation may find others. Not only are varieties and quantities indefinite, but the experimenter is constrained to conjecture whether the reduced compounds are of those easily oxidizable, as stated in so many words, or are of those with difficulty oxidized, as is the example, diazo-amino-benzene. In this latter is nothing but a guess, and not the "exact terms" by the statute required; and it compels him who would use the process to experiment with both varieties or the entire 300,000 compounds—a series of experiments to determine whether a substance possesses all the attributes of the combination, including which of many frothing agents is "suitable" to render the substance effective in flotation.

In this wide domain, Perkins had adventured little, discovered little. To hold that his accomplishments close the door to other explorers of the undiscovered country would extend his monopoly without warrant, reward him unduly, handicap progress in the art, and

defeat the statutory object to promote investigation, experiment, discovery, advance, and invention.

In so far as plaintiff contends that the patent narrows the claims to substances which will collect mineral when used with the to it suitable frothing agent, what is this but to say "any substance which will function successfully"? It is a statement of results, and not a description of the manner of making and using, and does not narrow, but widens, the field of necessary experiment. Moreover, the claims are too broad, in that they include substances without all the essential attributes of the discovery.

That is to say, claims 1 and 2 include compounds which are not solid, and not commonly classed as insoluble, substantially insoluble, but soluble to a very small degree, and not ineffective when used without a suitable frothing agent; and the third and fourth claims are likewise, and in addition include compounds which are oleaginous. This is not mere exclusion or limitation of the claims, but in legal contemplation is that inclusion and expansion which invalidates them.

But, were the claims valid, there is no infringement. Defendant's operations are with xanthate, which, as used, is neither solid, nor commonly classed as insoluble, substantially insoluble, but soluble to a very small degree, nor substantially nonfrothing. Lacking three of the 7–9 attributes of the combination patented, xanthate is a different compound and not within the patent.

To escape this conclusion, plaintiff contends that perhaps the effective principle in xanthate is xanthic acid, which is substantially insoluble. If the compound used does not infringe, neither does it for that, if resolved into elements, some one of them is like to the compound of the patent. In any event, plaintiff's contention aids it none; for, xanthic acid being an oil, did plaintiff avoid the Scylla of solubility, it would fall into the Charybdis of oleaginousness.

Furthermore, the effectiveness of xanthate, when used in flotation with a frothing agent, had been discovered and made known in January-August, 1915, long prior to Perkins, by Martin. His experiments and tests were equal to Perkins' prior to application for the patent in suit, and all agree such tests suffice for transfer to mill operations. Of this the evidence without conflict leaves no reasonable doubt.

In view of the premises it is unnecessary to consider various patents claimed to be anticipatory or illustrative of the prior art.

Decree for defendant.